UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| ETTA K. EARLS, | ) | CASE NO. 1:13CV228 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE. |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |


Etta K. Earls ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned REVERSES the ALJ's decision and REMANDS this matter for reevaluation and analysis consistent with this Opinion.

**I.     PROCEDURAL AND FACTUAL HISTORY**

On June 29, 2009, Plaintiff protectively applied for DIB and SSI, alleging disability beginning January 25, 2008.[1] ECF Dkt. #12 at 205-224.[2] The SSA denied Plaintiff's applications initially and on reconsideration. *Id*. at 141-170. Plaintiff requested an administrative hearing, and on May 12, 2011, an ALJ conducted an administrative hearing where Plaintiff testified and was represented by counsel. *Id.* at 48. The ALJ also accepted the testimony of a vocational expert ("VE"). *Id.*

---

[1]Plaintiff's previous DIB and SSI applications, in which she alleged disability beginning on September 12, 2003, were denied by the ALJ on January 24, 2008 and the Appeals Council declined review on May 13, 2009. *See* ECF Dkt. # 23 in Case Number 1:09-cv-1465. Upon appeal of that decision to federal court, Judge Lesley Wells of this Court rejected the Magistrate Judge's Report and Recommendation recommending remand and affirmed the decision of the ALJ. ECF Dkt. #s 28, 29, 33.

[2]References to the administrative record in this case refer to the ECF docket number of the cited document and the page number assigned to cited pleading by the ECF system, which can be found in the search box at the top of the page on the ECF toolbar.

On June 17, 2011, the ALJ issued a Decision denying benefits. ECF Dkt. #12 at 30-38. Plaintiff filed a request for review which the Appeals Council denied on November 27, 2012. *Id.* at 1-3, 25.

On January 31, 2013, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On June 7, 2013, Plaintiff filed a brief on the merits. ECF Dkt. #17. On July 8, 2013, Defendant filed a brief on the merits. ECF Dkt. #18. On July 23, 2013, Plaintiff filed a reply brief. ECF Dkt. #20.

**II**.      **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff, who was forty-nine years of age at the hearing, suffered from depression, anxiety, post traumatic stress disorder ("PTSD"), fibromyalgia, degenerative arthritis of the hip and shoulder, degenerative disc disease ("DDD") of the lumbar spine, ACL and medial meniscus tear, lumbosacral neyritis and radiculopathy, alcohol dependence, and psoriasis, which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c). ECF Dkt. #12 at 32. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§404.1520(d), 404.1525 and 404.1526, §416.920(d), 416.925 and 416.926 ("Listings"). *Id.* at 33. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §404.1567(b) and 416.967(b), except that she can never operate left foot controls, never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, occasionally stoop, kneel, crouch or crawl, avoid all exposure to unprotected height and avoid all use of moving machinery, and she can perform only simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, which involves only simple work-related decisions and routine workplace changes. *Id.* at 34.

With this RFC, the ALJ concluded that Plaintiff could return to her past relevant work as a cashier. ECF Dkt. #12 at 37. Consequently, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to social security benefits. *Id.* at 38.

### III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits.  These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

**V.**     **ANALYSIS**

   **A.**     **FIBROMYALGIA AND TREATING PHYSICIAN RULE**

   Plaintiff first contends that the ALJ improperly relied upon objective medical evidence in rejecting the opinions of her treating physician Dr. Modarelli, her treating rheumatologist Dr. Mandel, and Katy Eichas, Dr. Mandel's Physician Assistant ("PA") concerning her fibromyalgia. ECF Dkt. #17 at 11-13.

   On July 15, 2010, Dr. Modarelli completed a medical statement of Plaintiff's physical limitations and mental abilities.  ECF Dkt. #12 at 813.  He listed her diagnoses as depression, osteoarthritis, fibromyalgia, gastroesophageal reflux disease, and hypothyroidism and he concluded that Plaintiff could stand fifteen minutes at one time, sit up to thirty minutes at a time, she could work up to four hours per day, lift up to ten pounds frequently and occasionally, occasionally bend, never stoop, frequently lift her right and left arms over her shoulders, and had to occasionally elevate her legs above her waist during the workday. *Id.* at 641-642, 656-657, 813.  He opined that Plaintiff was not significantly impaired in understanding, remembering or carrying out simple or detailed instructions, but she was moderately limited in maintaining attention and concentration, working with others, interacting appropriately with the general public, accepting supervision, and getting along with co-workers. *Id.* He concluded that Plaintiff was markedly impaired in the degree that she suffered from depression and anxiety. *Id.* Dr. Modarelli opined that Plaintiff's impairments would cause her to be absent from work more than three times per month. *Id.*

-4-

Dr. Modarelli's treatment notes reflect that he first began treating Plaintiff on September 11, 2009.  ECF Dkt. #12 at 641.  His notes from July 2010 through February 2011 document his physical examinations of Plaintiff,  his diagnoses of Plaintiff with fibromyalgia upon examination and the gathering of her medical history, and his referral of her for pain management.  *Id.* at 851, 926-939.  He also prescribed numerous medications for her pain.  *Id.*  Plaintiff informed the pain management physician that she had tried exercise and aqua therapy in the past and it increased her pain.  *Id.* at 634, 859.

Plaintiff first consulted with Dr. Mandel, a rheumatologist, in January 2008.  ECF Dkt. #12 at 495.  He completed a pain questionnaire on her behalf on August 20, 2009 indicating that he had not evaluated Plaintiff since March 5, 2009, but she did have fibromyalgia, spinal arthritis and possible psoriatic arthritis.  *Id.* at 606.  He noted that Plaintiff complained of persistent and chronic muscle pain, fatigue, joint pain and back pain and she had tender points consistent with fibromyalgia.  *Id.*  He also indicated that Plaintiff suffered from depression which is shown to intensify fibromyalgia pain and he believed that she was being truthful about her perception of pain.  *Id.*  Dr. Mandel's treatment notes show that he added medications to help control her pain, he administered trigger point injections, and he referred her for physical therapy.  *Id.* at 851-852, 869.

PA Eichas completed a fibromyalgia RFC questionnaire directed to Dr. Mandel on April 29, 2010.  ECF Dkt. #12 at 804-805.  She scratched out Dr. Mandel's name on the form and wrote in her own.  *Id.* at 804.  She indicated that Plaintiff had appointments at the office three to four times per year since January 7, 2008 and identified Plaintiff's symptoms as multiple tender points, sleep symptoms, pain in 11 or more pressure points, history of widespread pain for three or more months, numbness and tingling, hypothyroidism, and depression.  *Id.* PA Eichas concluded that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations that PA Eichas described in the evaluation.  *Id.*  PA Eichas opined that Plaintiff's pain was severe enough to often interfere with her attention and concentration, she was incapable of even low stress, she needed a job that allowed her to shift positions at will, she would have to take unscheduled breaks every two hours, she would have to rest fifteen to thirty minutes before returning to work and she would have to sit quietly or lay down during this time.  *Id.* at 804-805.

PA Eichas further concluded that in her opinion, Plaintiff could: work two hours per day; stand thirty minutes at a time and stand and/or walk for up to two hours per day; sit for two hours at a time for up to four hours per day; lift ten pounds occasionally and up to five pounds frequently; never stoop; would occasionally need to lay down during the workday; and could occasionally raise her left and right arms over shoulder level. ECF Dkt. #12 at 805. She opined that Plaintiff would have good days and bad days, and on average, Plaintiff would be absent from work more than four times per month due to her impairments or treatment. *Id.* PA Eichas' treatment notes show that Plaintiff's medications were modified to help with her pain, Plaintiff received injections, and she was referred to aquatic and physical therapy. *Id.* at 488-489.

In his decision, the ALJ noted the assessments of Drs. Modarelli and Mandel and that of Ms. Eichas and found that:

> these opinions are not supported by the objective evidence, and are instead based on the claimant's subjective complaints. As discussed further below, those complaints are not credible. In addition, while they are from medical professionals, neither is a rheumatologist, and Ms. Eichas is not an acceptable medical source. Due to these factors, both opinions are given little weight, only to the extent that they show the claimant is in chronic pain.

ECF Dkt. #12 at 36. Further on in his decision, the ALJ explained:

> The claimant's impairments are either supported by very little objective evidence or do not exhibit signs that can be objectively seen. Unfortunately, there are several factors that prevent the claimant's allegations from being accepted as credible. Most concerning is the claimant's lack of comprehensive treatment. The claimant alleges severe and debilitating pain, but skips appointments with her rheumatologist and refuses to undergo epidural injections. The claimant was encouraged multiple times to take physical therapy, but refused. While the claimant was consistent in her mental health care, she never sought psychotherapy. This approach to her treatment is consistent with a person in which she describes often as 10 out of 10 pain. The claimant also displays a level of functioning in excess of what she alleges. She drives her truck and reported moving herself into her new apartment, after which she was sore. (exh. B49F p2) Also of concern are the multiple times she sought Vicodin form her pain manager, despite being told that opiates are a poor treatment for fibromyalgia. (exh. 11F pp8, 10) The claimant did eventually end up on Vicodin for her back pain. (exh B54F p2) Finally, the claimant was seen by a visiting nurse after her knee injury, and this nurse's report was unremarkable except for a comment about being forgetful. (exh. B67F p15).
>
> In sum, the above residual functional capacity assessment is supported by the radiology and the opinions of the State agency. The claimant's allegations are not credible due to her unwillingness to seek out treatment and her demonstrated level of functioning.

*Id.* at 37.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

When an ALJ decides that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.  *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."  *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

-7-

In the instant case, the ALJ repeatedly refers to a lack of objective medical evidence to attribute less than controlling weight to the opinion of Dr. Modarelli.  ECF Dkt. #12 at 36-37. However, unlike other medical conditions, fibromyalgia is not amenable to objective diagnosis and standard clinical tests are "not highly relevant" in diagnosing or assessing fibromyalgia or its severity. *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988); *see also Rogers*, 486 F.3d at 243–44 ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant"). Fibromyalgia is a condition that "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston,* 854 F.2d at 817–820. "A person with a condition of fibromyalgia certainly could have serious enough pain to have a disability under the Social Security Act, but the condition does not automatically qualify as a listing level impairment." *Bartyzel v. Comm'r of Soc. Sec.*, 74 F.App'x 515, 527 (6th Cir.2003). Those who suffer from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244 (quoting *Preston*, 854 F.2d at 820).  In the absence of other objective manifestations, diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Preston*, 854 F.2d at 820.

In addition to discounting Dr. Modarelli's opinion because it was not supported by objective medical evidence, the ALJ also noted that the opinion is based upon Plaintiff's subjective complaints. ECF Dkt. #12 at 36.  However, "[g]iven the nature of fibromyalgia and the absence of objective evidence to confirm its severity, a physician must necessarily rely on his or her patient's self-reported pain and other symptoms as an 'essential diagnostic tool' in determining the patient's limitations." *O'Neal v. Comm'r of Soc. Sec.*, No. 1:10-cv-531, 2011 WL 4383724, at *15 (S.D. Ohio Aug. 24, 2011), unpublished, citing *Johnson v. Astrue*, 597 F.3d 409, 412 (1st Cir.2009).

Since the ALJ applied an erroneous standard in attributing less than controlling weight to Dr. Modarelli's assessment concerning Plaintiff's fibromyalgia, the Court REMANDS this case to the ALJ for reevaluation, analysis and explanation concerning Plaintiff's fibromyalgia impairment.

-8-

In addition, the ALJ failed to adequately explain why he did not attribute at least great deference to the opinion of Dr. Modarelli under 20 C.F.R. § 404.1527(d) and 20 C.F.R. § 416.927(d).  While he noted that Dr. Modarelli was not a rheumatologist[3], which is one of acceptable factors in determining the proper weight to give a treating source's opinion, he failed to provide any further explanation or review any of the other factors that favored giving great weight to the opinion, including the length, frequency, nature and extent of the treatment relationship, and the supportability and consistency of Dr. Modarelli's conclusions to explain why he did not afford great weight to his opinion.  Dr. Modarelli treated Plaintiff frequently over a lengthy period of time for all of her impairments, coordinated her care with other specialists and treatment modalities, such as pain management, and reviewed the records provided by Plaintiff's specialists.  ECF Dkt. #12 at 641-642, 655-657, 701, 813, 864-865, 926, 945, 952.  These factors appear to favor attributing great deference to Dr. Modarelli's opinion.

The ALJ instead chose to give the most weight to the opinion of a non-examining state agency physician who opined that with her primary diagnosis of fibromyalgia, Plaintiff would be capable of light work, with limited climbing, stooping and crouching.  ECF Dkt. #12 at 36, citing ECF Dkt. #12 at 643-648.  The ALJ concluded that "[w]hile later evidence shows that the claimant is more limited, moderate weight is given to this opinion because it is consistent with the objective medical evidence, particularly the radiology and bone scans."  *Id*.  Again, as applied to fibromyalgia, objective medical findings are not highly relevant.  Further, this non-examining state agency physician also relied upon normal radiological and examination findings for his assessment.  *Id*. at 644, 648.  Accordingly, the ALJ erred in attributing such weight to this opinion because it was based upon a lack of objective medical evidence.

As to PA Eichas, the ALJ attributed little weight to her opinion for the same reasons that he attributed little weight to those of Dr. Modarelli:  the lack of objective medical evidence to support

---

[3]The Court notes that this paragraph of the ALJ's decision is somewhat confusing.  The ALJ reviews the opinions of Dr. Modarelli, Dr. Mandel, and PA Eichas.  ECF Dkt. #12 at 35-36.  He then offered the lack of objective evidence and subjective reporting as reasons for his treatment of those opinions, but also stated that "neither is a rheumatologist."  ECF Dkt. #12 at 36.  However, Dr. Mandel is a rheumatologist and the ALJ acknowledged as much in the same paragraph.  *Id.* at 35-36, 636.

the opinion and the fact that the opinion was based upon Plaintiff's subjective complaints. ECF Dkt. #12 at 36. However, the ALJ also noted that PA Eichas was not an acceptable medical source. ECF Dkt. #12 at 36.

The ALJ is correct that under the social security regulations, physician assistants are not acceptable medical sources and therefore their opinions are not entitled to controlling weight. SSR 06-03p. According to SSR 06–03p, 20 C.F.R. §§ 404.1527 and 416.927 do not explicitly address how to evaluate opinions and evidence from "other sources" such as a physician assistant, nurse practitioner or licensed clinical social worker. SSR 06-03p explains that opinions from these medical sources, though not "acceptable medical sources" under the social security rules and regulations, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p. The Rule further clarifies that:

> Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers ... who have seen the individual in their professional capacity. These factors include:
>
> How long the source has known and how frequently the source has seen the individual;
>
> How consistent the opinion is with other evidence;
>
> The degree to which the source presents relevant evidence to support an opinion;
>
> How well the source explains the opinion;
>
> Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
>
> Any other factors that tend to support or refute the opinion.

-10-

SSR 06-3p.  An ALJ can consider the fact that an opinion came from an "acceptable medical source" as opposed to one from an "other medical source" in attributing greater weight to the former opinion. *Id*.  However, the Rule points out that the opinion of a medical source who is not an "acceptable medical source" may in some circumstances outweigh the opinion of an "acceptable medical source," even that of a treating physician, such as when the former has seen the individual more often than the treating source, provides better supporting evidence, and has a better explanation for her opinion. *Id*.  Further, the ALJ should explain the weight given to the opinions from "other sources," or otherwise make sure that he discusses the evidence so that the claimant or a subsequent reviewer can follow his reasoning, when such opinions may have an effect on the outcome of the case.  SSR 06-03p.

Thus, while the ALJ in this case was correct in considering the fact that PA Eichas was not an "acceptable medical source" as a factor in attributing little weight to her opinion, this was only one factor in his determination.  He also found that her opinion was not supported by the objective medical evidence and instead relied upon Plaintiff's subjective complaints.  ECF Dkt. #12 at 36. However, as with the opinion of Dr. Modarelli and the non-examining state agency physician, objective medical evidence is not highly relevant in fibromyalgia cases and "self-reported pain and other symptoms is an 'essential diagnostic tool' in determining the patient's limitations." *O'Neal*, 2011 WL 4383724, at *15.  The ALJ did not provide any further analysis or discussion as outlined in SSR 06-03p to justify his decision to attribute little weight to the opinion of PA Eichas.  The Court notes that PA Eichas is a physician assistant to Dr. Mandel, a rheumatologist, and she examined and treated Plaintiff at least six times as indicated in the record.  ECF Dkt. #12 at 488, 489, 678, 713, 808.  Since the ALJ only addressed one proper factor in attributing little weight to PA Eichas' opinion and provided no further explanation or analysis, the Court finds that REMAND is necessary for further analysis and explanation of the weight given to this opinion.

## B.    CREDIBILITY

The Court also REMANDS this case for the ALJ to analyze and reevaluate the discounting of Plaintiff's credibility in conjunction with her fibromyalgia.  In discounting her credibility, the

ALJ noted that very little objective medical support or signs were shown. ECF Dkt. #12 at 37. "Given that it is simply impossible for the ALJ to re-evaluate the treating physician evidence without evaluating plaintiff's pain and other credibility issues, the undersigned concludes that plaintiff's credibility must be re-assessed as well." *Laxton v. Astrue*, No. 3:09-cv-49, 2010 WL 925791, at *6 (E.D.Tenn. Mar. 9, 2010), unpublished ("[B]ecause of the subjective nature of fibromyalgia, the credibility of a claimant's testimony regarding her symptoms takes on substantially increased significance."); *see also Rogers*, 486 F.3d at 243 ("[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important."); *Hayes v. Comm'r*, 2010 WL 723766, *9 (N.D.Ohio 2010) (The ALJ erred in using objective medical signs to determine whether claimant's subjective assertions regarding pain were credible.). In light of the foregoing conclusions, the undersigned also suggests that the ALJ should re-assess plaintiff's credibility and subjective pain complaints in the context of her fibromyalgia.

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40.

Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

-12-

The ALJ in this case did offer other reasons beside a lack of objective medical evidence for discounting Plaintiff's credibility. The ALJ cited to Plaintiff's "lack of comprehensive treatment" as a second reason for discounting her credibility. ECF Dkt. #12 at 37. The ALJ noted that while she alleged severe pain, Plaintiff skipped appointments with her rheumatologist, refused to undergo epidural injections, and refused to go to physical therapy. *Id.* However, the ALJ failed to mention some of the reasons for missing appointments, including her mental difficulties, and he failed to consider the many appointments and modalities that Plaintiff did try. *Id.* at 71 (Plaintiff testified that she sometimes gets her appointments mixed up or forgets them), 73 (Plaintiff testified that medications cause confusion and fatigue), 371 (injection in back), 407 (tried physical therapy in the past and it exacerbated her pain), 409 (Dr. Chauhan indicated that Plaintiff's frustration with pain causing psychological stress and he is not sure how compliant she will be with his recommendations), 487 (L4-5, L5-S1 injection), 488 (right hip and bursa injection), 537 (Humira added to medications), 559 (Lyrica), 563 (Ultram, muscle relaxer), 564 (Flexeril, Skelaxin), 581 (Plaintiff's counselor indicated that Plaintiff was unreliable with keeping appointments due to her pain and depression), 703 (TENS unit), 711 (Baclofen) (nerve block at T8-T9), 712 (Lidocaine patch), 769-773 (Plaintiff frustrated with condition and doctors), 773 (social services staff concerned about Plaintiff's noncompliance with doctors and that she does not understand implications of her diagnoses), 929 (injection greater trochanter), 944, 952 (recommendation for visiting nurse due to problems with medication compliance).

The ALJ also discounted Plaintiff's pain allegations because she was able to drive a truck and move herself into a new apartment and was sore afterward. ECF Dkt. #12 at 37. However, these minimal instances of physical activity are insufficient to discount Plaintiff's credibility and find that she is capable of engaging in substantial gainful activity. *Hayes*, 2010 WL 723766, at *9.

The ALJ further cited to Plaintiff's pursuit of Vicodin from her pain manager, even though her pain manager told her that Vicodin was not a good treatment for fibromyalgia. ECF Dkt. #12

at 37, 405. This is a factor that the ALJ could rely upon in discounting Plaintiff's credibility, but it alone is not an adequate basis in which to discount Plaintiff's credibility.

Finally, the ALJ cited to the unremarkable findings in a visiting nurse's report after Plaintiff's knee injury, except for a notation that Plaintiff was forgetful. ECF Dkt. #12 at 37. This is insufficient to discount Plaintiff's credibility to the extent that the ALJ meant that no objective medical findings were presented in the nurse's report that substantiated Plaintiff's complaints of pain. Further, this actually supports one of the reasons why Plaintiff did not go to some of her appointments.

The Court also notes that the ALJ failed to consider the other factors for determining Plaintiff's credibility, such as the type, dosage and side effects of her medications. SSR 96-7p. Plaintiff was on a number of medications, including muscle relaxers and pain killers, and numerous medical reports indicated side effects from those medications that could bear on her ability to perform work-related activities. *See* ECF Dkt. #12 at 73 (Plaintiff testified that her medications cause confusion, fatigue, headaches), 376 (Skelaxin makes her sleepy), 391 (as of October 15, 2008, Plaintiff taking Lyrica, Flexeril, Effexor, Ambien, Amitriptyline, Naprosyn and Skelaxin, among others), 392 (Plaintiff reports Skelaxin makes her feel somewhat fuzzy), 406 (Flexeril and Skelaxin discontinued and added Baclofen), 410 (Celebrex samples given), 484 (Humira).

Since the ALJ's reasons for discounting Plaintiff's credibility relating to the severity and limiting effects of her fibromyalgia are insufficient, the Court REMANDS the instant case for further evaluation, analysis and articulation of the credibility determination concerning Plaintiff's fibromyalgia.

### C.     MENTAL IMPAIRMENTS AND TREATING PHYSICIAN RULE

Plaintiff also asserts that the ALJ erred in failing to adequately explain the weight that he gave to mental assessments co-authored by Katy Proehl, a nurse and Robert Martin, M.D. on October of 2008, the opinion of Nurse Proehl on August 5, 2009 co-authored with Dr. Macknin, Plaintiff's treating psychiatrist, and Dr. Macknin's assessments on December 2, 2009 and March 14, 2011. ECF Dkt. #17 at 16-19.

On October 7, 2008, Nurse Proehl and Dr. Martin signed a mental functional capacity assessment that they completed on behalf of Plaintiff.  ECF Dkt. #12 at 363-364.  They listed Plaintiff's diagnoses and problems as major depression, easily confused, coping issues, and intermittent substance abuse issues.  *Id*. at 364.  They opined that Plaintiff was moderately limited in:  remembering, understanding and executing simple, very short instructions and work-like procedures; performing activities within a schedule and with regular attendance and punctuality; sustaining an ordinary routine without special supervision; working in conjunction with others without being distracted by them; making simple, work-related decisions; interacting appropriately with the general public; getting along with co-workers without distracting them or exhibiting behavioral extremes; and being aware of normal hazards and taking appropriate precautions.  *Id*. at 363.  They opined that Plaintiff was markedly limited in her abilities to: understand, remember and execute detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; making simple decisions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in the work setting; traveling in unfamiliar places or using public transportation; and in setting realistic goals or making plans independently of others.  *Id.*  Nurse Proehl and Dr. Martin opined that Plaintiff was unemployable and would be so limited for twelve months or more.  *Id*.

On August 5, 2009, Dr. Macknin signed an assessment of Plaintiff's mental ability to perform work related activities.  ECF Dkt. #12 at 600.  The assessment was directed to Nurse Proehl and it appears that both she and Dr. Macknin completed and signed it.  *Id*. at 601.  The form defined the various definitions of rating terms, such as none, mild, moderate, marked and extreme.  *Id*. at 600.  They opined that Plaintiff was moderately limited in: the deterioration of her personal habits and in performing simple tasks; she was markedly limited in her abilities to: relate to other people; the social aspect of her daily living activities; performing activities within a schedule, maintaining regular attendance and being punctual; responding appropriately to supervision; responding appropriately to co-workers; and in using good judgment; and she was extremely limited in her

-15-

abilities to: maintain concentration and attention for extended periods; sustaining a routine without special supervision; understanding, remembering and executing instructions; responding to customary work pressures; responding appropriately to changes in the work setting; performing complex, repetitive or varied tasks; and in behaving in an emotionally stable manner. *Id.* They stated that Plaintiff's medications, especially her chronic pain medications, decrease her ability to function. *Id.* at 601. They diagnosed Plaintiff with major recurrent depressive disorder, chronic pain syndrome, dysthymia, and personality disorder not otherwise specified with avoidant traits. *Id.* They concluded that Plaintiff's condition would deteriorate if she was placed under stress, especially that of a job and her impairments would cause her to be absent from work more than three times per month. *Id.* In the "additional comments" section of the form, they wrote that Plaintiff's limitations were ongoing and not expected to dramatically change for the better. *Id.*

Dr. Mackin completed another assessment on December 2, 2009 where she opined that Plaintiff was moderately limited in: the deterioration of her personal habits; responding appropriately to supervision; responding appropriately to co-workers; and in using good judgment. ECF Dkt. #12 at 673-674. She found Plaintiff markedly limited in her abilities to: relate to other people; the social aspect of her daily living activities; performing activities within a schedule, maintaining regular attendance and being punctual; maintaining concentration and attention for extended periods; sustaining a routine without special supervision; understanding, remembering and executing instructions; and in responding appropriately to changes in the work setting. *Id.* She found Plaintiff extremely limited in her abilities to: respond to customary work pressures; and in behaving in an emotionally stable manner. *Id.* She noted that she used the psychiatric evaluation to describe the limitations that she opined for Plaintiff and she stated that the medications that she prescribed for Plaintiff would have little effect on Plaintiff's ability to function and if they worked, would actually increase her ability to function. *Id.* at 674. She diagnosed Plaintiff with major recurrent depressive disorder, chronic pain syndrome, phobia, and possible developmental delay. *Id.* She concluded that Plaintiff's condition would likely deteriorate if she were placed under stress, especially job stress and Plaintiff would be absent from work more than three times per month due to her impairments or treatment. *Id.*

-16-

On March 14, 2011, Dr. Mackin completed another mental assessment captioned "Mental Assessment 'Condition Prior to 12/31/08 and Continuing' Addendum." ECF Dkt. #12 at 942. Dr. Mackin indicating that Plaintiff's impairments have been ongoing from prior to December 31, 2008 and continuing and clarifying that her December 2, 2009 assessment in which she stated that Plaintiff's limitations existed since at least May 14, 2009 through the present did exist during that time and actually existed prior to December 31, 2008 and continuing. *Id.*

The ALJ addressed the opinions of Nurse Proehl and Dr. Martin, attributing little weight to their opinions because no evidence existed that Dr. Martin ever treated Plaintiff and no treatment notes or signs from Nurse Proehl existed in the record to support the opinions. ECF Dkt. #12 at 36. The ALJ also surmised that the opinions were based upon Plaintiff's subjective complaints and were inconsistent with the "GAF scores assigned." *Id.*

The ALJ is correct that no evidence in the record shows that Dr. Martin was a treating physician. Plaintiff did not list her in her disability reports and no notes or references are made to Dr. Martin in the record aside from the October 7, 2008 assessment. ECF Dkt. #12 at 251-252. However, Dr. Martin did sign the assessment which indicated that Plaintiff's last examination was on October 7, 2008. ECF Dkt. #12 at 363. Thus, while the ALJ was not required to apply the treating physician rule to Dr. Martin's opinion, he was required to properly evaluate the opinion as a medical source opinion under 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.527. Further, the ALJ found that the opinion was based primarily on Plaintiff's subjective report and was inconsistent with the GAF scores assigned. *Id.* at 36. However, attributing less weight to a treating psychiatrist's opinion because it is based primarily upon the subjective complaints of a claimant is inadequate because "psychology and psychiatry are, by definition, dependent on subjective presentations by the patient" and this rationale for rejecting a treating psychiatrist's opinion, "taken to its logical extreme ... would justify the rejection of opinions by all mental health professionals[ ] in every case." *Winning v. Comm'r of Soc. Sec.*, 661 F.Supp.2d 807, 821 (N.D.Ohio 2009). Further, some of the GAF scores assigned to Plaintiff, including at least one by Nurse Proehl, did confirm serious symptoms. ECF Dkt. #12 at 341.

-17-

And as to Nurse Proehl's opinion, while she, like PA Eichas, is not an "acceptable medical source," the ALJ was nevertheless required to consider her opinion under SSR 06-03p. The ALJ merely stated that no support for such an opinion existed in Nurse Proehl's treatment notes. ECF Dkt. #12 at 36. However, Nurse Proehl's notes do provide some support for her opinion. She first examined Plaintiff on April 18, 2007 for an initial psychiatric evaluation and her diagnoses included major depressive disorder and active alcohol dependence. *Id.* at 334. She surmised that Plaintiff was "moderately ill" and suggested medications and counseling. *Id.* at 335.

The ALJ also found that the GAF scores did not support the extreme limitations of Nurse Proehl and Dr. Martin. ECF Dkt. #12 at 36. While the Sixth Circuit has held that it is "not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score," *Kornecky*, 167 F. App'x at 511, at least one of Nurse Proehl's GAF scores corresponds to serious limitations, as do her treatment notes. For example, on April 18, 2007, she assigned Plaintiff a GAF of 50, which indicates serious symptoms. *Id.* at 341. Further, the record shows that Nurse Proehl treated Plaintiff at least six times and her progress notes indicate diagnoses of major depressive disorder and dysthymia, with questionable cognitive skills, trouble with coping, communication difficulties, depression, confusion and loose thought processes. Nurse Proehl's psychiatric progress note of February 4, 2009 indicates diagnoses of major depressive disorder and indicates that Plaintiff is moderately to markedly mentally ill and she describes Plaintiff as a poor communicator, with poor listening skills, loose thought process, depressed mood, up and down temper issues, confusion, questionable cognitive skills and poor coping skills. *Id.* at 593-594. Nurse Proehl's October 7, 2008 progress notes also list major depressive disorder as a diagnosis, note Plaintiff's loose thought process, her confusion and stress, and questions Plaintiff's cognitive functioning. *Id.* at 595. Nurse Proehl's July 15, 2008 progress notes indicate dsythymia and history of major depressive disorder as diagnoses, note Plaintiff's rambling, extremely loose thought process, and her sleep issues and frustration. *Id.* at 597. While these may or may not be sufficient to deem Nurse Proehl's opinions worthy of great weight, the fact is that the ALJ did not adequately explain why he found that the progress notes did not support Nurse Proehl's opinions.

-18-

The ALJ also attributed little weight to the opinions of Plaintiff's treating psychiatrist, Dr. Macknin. ECF Dkt. #12 at 36-37. Unlike his treatment of Nurse Proehl's opinions, the ALJ cites to and discusses the treatment notes supporting his determination. ECF Dkt. #12 at 36. He explains that the treatment notes "contain little to base any limitations on, yet she gives marked and even extreme limitations. This is inconsistent. It is also consistent with the claimant's functional abilities as detailed in her caseworker reports. The various GAF scores assigned to the claimant are more consistent with the record, and are given moderate weight." *Id.* at 36-37.

Substantial evidence supports the ALJ's treatment of Dr. Macknin's opinions. Dr. Macknin's May 13, 2009 psychiatric evaluation showed that Plaintiff was oriented, with average demeanor, although somewhat dull, with average eye contact, average activity level, clear speech, no hallucinations, no delusions, no aggressive behavior, and mild dsythymia. ECF Dkt. #12 at 561. Dr. Macknin noted that Plaintiff did have a constricted affect and poor concentration, and may have borderline intelligence, but she concluded that Plaintiff was "moderately ill" and assigned her a GAF of 55, which indicated moderate symptoms. *Id.* Dr. Macknin's progress note dated February 4, 2009 authored by Nurse Proehl indicated that Plaintiff had started therapy and loved it, Plaintiff had poor coping skills and sleep problems. *Id.* at 583. Dr. Macknin noted that Plaintiff was a very poor listener, her thought process was very loose, her depression and anger fluctuated, and Plaintiff was easily confused and may have questionable cognitive skills. *Id.* However, her appearance, demeanor, speech, thought content, perception, and suicidal/homicidal ideations were all within normal limits. *Id.* Dr. Macknin found Plaintiff as "moderately ill" to "markedly ill" on the Clinical Global Impression Scale. *Id.* She diagnosed Plaintiff with major depressive disorder and alcohol dependence, as well as fibromyalgia. *Id.* June 10, 2009 treatment notes indicated that Plaintiff's mood was dysthymic and she reported trouble sleeping, but she had no hallucinations, her diagnoses remained the same, and she had thought processes, thought content, perception, behavior and cognition all within normal limits. *Id.* at 581-582. Yet Dr. Macknin indicated that Plaintiff was "markedly ill," but did not explain why. *Id.* at 582. Dr. Macknin's July 22, 2009 treatment notes document that Plaintiff reported that Effexor was helping her depression and Plaintiff had no

-19-

hallucinations.  *Id*. at 579-580.  Dr. Macknin changed the "moderately ill" designation to "markedly ill," but failed to explain in her treatment note the reasons for doing so.  *Id*. at 580.

The ALJ cited to these treatment notes, explaining that they did not support Dr. Macknin's severe limitations for Plaintiff in her assessments.  ECF Dkt. #12 at 36.  He also reasoned that the notes themselves did not explain why Dr. Macknin changed Plaintiff's status to "markedly ill," when nothing in her treatment notes differed from the notes in which she described Plaintiff as "moderately ill."  *Id*.  The ALJ further cited to progress notes indicating that Plaintiff presented with a dull demeanor to Dr. Macknin, her eye contact and activity level were average, she had GAF scores of 52 and 55 which indicated moderate symptoms, and he noted mainly normal mental status findings, with loose thought processes at times.  *Id*.  The Court finds that these constitute good reasons for attributing less than controlling weight to Dr. Macknin's opinions and substantial evidence supports the ALJ's decision to attribute little weight to them.

Based upon the ALJ's analysis, the ALJ did not violate the treating physician rule when evaluating Dr. Macknin's opinions as he properly applied the treating physician rule and substantial evidence supports that decision.

### D.    OTHER ISSUES

Plaintiff also raises errors concerning the ALJ's RFC determination and the ALJ's failure to consider lay witness evidence.  ECF Dkt. #17 at 22-24.  This Opinion does not address these additional arguments because the ALJ's further evaluation of the evidence relating to Plaintiff's fibromyalgia and the related opinions on remand, including any lay opinions concerning Plaintiff's fibromyalgia, may impact his findings under the remaining steps of the sequential analysis.  See *Trent v. Astrue*, Case No. 1:09CV2680, 2011 WL 841538, at *7 (Court declined to address claimant's remaining assertion of error because remand already required and the ALJ's application of the treating physician rule on remand might impact his findings under the sequential disability evaluation).

## VI.    CONCLUSION

For the foregoing reasons, the decision of the ALJ is REVERSED and this matter is REMANDED to the ALJ to reevaluate and further analyze Plaintiff's fibromyalgia impairment with particular regard to the application of the treating physician rule to Dr. Modarelli's opinion concerning Plaintiff's fibromyalgia, the application of the "other source" rule to PA Eichas' opinions, and Plaintiff's credibility.  The ALJ must also reevaluate and further analyze the mental functional capacity assessment of Plaintiff by Dr. Martin under the medical source rule and Nurse Proehl's assessment  under the "other source" rule.


DATE: March 28, 2014


                                             */s/George J. Limbert*
                                             GEORGE J. LIMBERT
                                             UNITED STATES MAGISTRATE JUDGE